IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORAD ELUSTA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 06 C 4264 |
| v. | ) |
| | ) |
| CITY OF CHICAGO, et al., | ) HONORABLE DAVID H. COAR |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court are plaintiffs' current attorneys' petition for their fees, and his former attorneys' motion to adjudicate a lien for their own fees. For the reasons stated below, the petition for attorneys' fees is GRANTED in part, costs are taxed against defendants, and the motion to adjudicate the lien is GRANTED in part and DENIED in part.

**BACKGROUND**

Plaintiffs sued defendants under 42 U.S.C. § 1983. Plaintiff Morad Elusta asserted that on August 5, 2005, he was falsely arrested and then beaten by defendant police officers Brian Josephs and Raymond McCann. Elusta allegedly suffered both physical and psychological injuries, as well as emotional distress. Elusta claims that he was falsely arrested based on accusations made by his neighbor, former police officer Robert Rubio. The assault charge was eventually dismissed for want of prosecution. After Elusta filed a complaint in state court based on the arrest incident, on August 22, 2006 a search warrant was executed at his home. Elusta's children and their mother, Christine Lopez, asserted that the officer who performed the search, Aaron Cunningham, destroyed their home and detained them for the duration of the lengthy search (Morad Elusta outside the home and the rest of the plaintiffs inside). Plaintiffs contend

that the search warrant was executed based on false accusations made by defendant Rubio, and that the entire incident caused them emotional distress. Defendants denied any wrongdoing.

The defendants (except for Rubio) offered the plaintiffs $100,000 to settle the case against them. Plaintiffs' attorneys thought they had reached a deal, but plaintiffs disagreed. The attorneys withdrew and plaintiffs retained new counsel, who moved to vacate the purported settlement. The magistrate judge determined there had not actually been a settlement because Morad's daughter, plaintiff Crystal Elusta, was legally an adult but had not given her authorization to settle the case. This court adopted the magistrate judge's report and recommendation, and eventually the case proceeded to an eight-day trial. Before submitting the case to the jury, the court granted a directed verdict for Rubio on the claims of malicious prosecution and battery, and the claim under the Illinois Hate Crime Act. The jury found for Morad Elusta on his excessive force and intentional infliction of emotional distress claims, awarding compensatory damages of $20,000 for each claim. The jury found for the defendants on the remaining claims, including all of the other plaintiffs' claims. The parties filed two separate appeals.

While the appeals were pending, plaintiffs' current attorneys filed this petition for attorneys fees based on the victory on the excessive force claim.[1] Just after one appeal was resolved, the plaintiffs' former attorneys filed a motion to adjudicate a lien for their attorneys' fees. The other appeal is still pending.

---

[1] The parties agree that Morad Elusta's victory on the state law IED claim would not trigger entitlement to attorneys' fees under 42 U.S.C. § 1988(b). (Joint Statement of Fee Petition, dkt. 256 at 1.)

## ANALYSIS

### I. Petition for Attorneys' Fees

In an action brought under 42 U.S.C. §1983, the district court has discretion to award the prevailing party reasonable attorneys fees. 42 U.S.C. § 1988(b); *Sottoriva v. Claps*, 617 F.3d 971, 974 (7th Cir. 2010). Generally, the court begins by calculating a "lodestar" amount, that is, a reasonable hourly rate multiplied by the number of hours reasonably spent on the litigation. *Id.* at 975. Plaintiffs propose that their attorneys should be awarded $252,702.50. Defendants take issue with all aspects of plaintiffs' petition, responding that the appropriate lodestar is $131,415, and contending that the lodestar amount should be reduced to $26,300.

#### A. Prevailing Party

Defendants do not dispute that Morad Elusta is a prevailing party, given that the jury awarded him $20,000 for his excessive force claim. They point out, however, that the other plaintiffs—Christine Lopez, Crystal Elusta, and Moriah Elusta—did not prevail on their claims, which were premised on the August 2006 search of their home. It is not clear that plaintiffs are contending that anyone other than Morad is a prevailing party, but to the extent they are, the court agrees with defendants that Morad is the only prevailing plaintiff. Given that the other plaintiffs' claims about the 2006 search were based on the same facts as Morad's claim, however, whether the rest of the plaintiffs are considered "prevailing parties" or not does not affect what fees would be appropriate.

#### B. Rate

A "reasonable" rate is the prevailing market rate: the rate that "is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010). "[A]n attorney's actual billing rate for

comparable work is presumptively appropriate for use as a market rate." *Jeffboat, LLC v. Director, Off. of Workers' Comp. Progs.*, 553 F.3d 487, 490 (7th Cir. 2009). But the party seeking fees must produce evidence supporting their billing rate. *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). If it is not possible to determine the attorney's actual hourly billing rate, then the court looks "'to the next best evidence—the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation.'" *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996)). The party seeking fees must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, 104 (1984). Plaintiffs argue that they should receive a premium on the usual hourly rate because the case was taken on a contingency basis, but the Supreme Court has rejected such a premium. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010).

      Plaintiffs ask for a rate of $425 per hour for attorney Zane Smith and $300-$350 an hour for Sheila Genson. The primary evidence plaintiffs have submitted of the attorneys' billing rates are the attorneys' own affidavits. Attorney Zane Smith avers that his "customary and usual" rate for a matter like this one ranges from $325 per hour to $450 per hour, and attorney Sheila Genson states that her customary billing rate was $300 per hour in 2007 and $350 per hour in 2008. Smith has been admitted to the Illinois bar since 1983, and Genson since 1992. Both attorneys focus their practice on litigation, but they do not specialize in civil rights suits like this one. Neither attorney has attached billing invoices in which they have charged their stated rates

or directed the court's attention to other cases in which they have been awarded similar rates. They do attempt to show that their rates are in line with those of the community by submitting (in their reply) an affidavit from a civil rights lawyer who deems their rate reasonable. Saying that the rate is "reasonable" without providing any concrete examples, however, is of limited use. *Edwards v. Rogowski*, No. 06 C 3110, 2009 WL 742871, at * 4 (N.D. Ill. Mar. 18, 2009); *see Blum v. Stenson*, 465 U.S. 886, 895 n.1 (1984). Plaintiffs also compare their rates to the Laffey Matrix, a guideline that the U.S. Attorney's Office in Washington, D.C. has come up with to avoid litigating appropriate rates. *See* United States Attorney's Office for the District of Columbia, Laffey Matrix 2003-2010, *available at* http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html. The Laffey Matrix rates for the 2007-2008 period are $440 for a lawyer of Smith's experience and $390 for a lawyer of Genson's experience. However, the Laffey Matrix has not been formally adopted in the Seventh Circuit, and its rates appear significantly higher than those typically awarded in this district, as demonstrated by the following case law. In addition, though plaintiffs claim that the matrix is routinely followed in this district, the cases they cite do not appear to rely on it.

Plaintiffs compare their rate to those approved for other lawyers in other cases. Their first comparison is to a suit under 42 U.S.C. § 1983 involving fairly complex questions of First Amendment law, in which a judge approved higher rates for attorneys from Jenner & Block. *Entm't Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006). It is not clear which attorneys the plaintiffs consider most comparable, but partners who graduated law school in 1974 and 1996 were compensated at rates of $495 and $425 per hour. *Id.* at *2, 5. However, in that case the plaintiffs provided invoices that enabled the court to conclude both that the attorneys normally charged the proffered rates and that the plaintiffs had

paid counsel at those rates. *Id.* at *3. The issues involved fell within the attorneys' area of expertise. *Id.* at *4. And significantly, the court recognized that those attorneys' market rates were "above average for attorneys with the same number of years of experience." *Id.* at *5.

Plaintiffs also note another § 1983 case, this one concerning an excessive force claim, in which experienced attorneys who specialized in civil rights litigation were awarded $375 per hour. *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *4-5 (N.D. Ill. Oct. 31, 2006.) A third attorney with extensive courtroom experience was compensated at a rate of $425 per hour. *Id.* at *5. In that case, though, the attorneys presented evidence that they were customarily paid at those rates. Plaintiffs further point to a Title VII case in which the plaintiffs secured a jury award of $2.8 million, where an experienced attorney was awarded $415 per hour in light of her "impeccable" strategic decisions and a closing argument that the court deemed "a masterpiece of courtroom advocacy." *Pawell v. Metro. Pier & Exposition Auth.*, No. 03 C 3158, 2005 WL 1902116, *3-4 (N.D. Ill. Mar. 4, 2005). A less experienced attorney was also awarded $230 per hour in view of her exceptional credentials and courtroom skills. *Id.* at *5.

The defendants respond that the appropriate rate for attorney Zane Smith is $300 per hour, and for Sheila Genson $225 per hour, citing cases they deem more analogous. One is a civil rights case in which an attorney with 12 years' experience, but only academic experience with civil rights law, was awarded a rate of $285 an hour. *Schultz v. City of Burbank*, No. 06 C 5646, 2007 WL 1099479, at *3-4 (N.D. Ill. Apr. 10, 2007). That amount was based on the rates courts had awarded the same attorney in other cases and on affidavits submitted by both parties. The defendants also point out another civil rights case in which attorneys from a prominent civil rights firm were granted an hourly rate of $300 instead of their requested rates of $350, $400, and $450, based on the court's determination that $300 was comparable to the court's previous

- 6 -

awards in civil rights cases. The defendants also argue that Genson's "secondary role" commands a lower rate, and Genson's asking rate was indeed significantly less than Smith's. Finally, the defendants also point out that their counsel has charged only $225 per hour for attorney James Soto (admitted in 1986) and $200 per hour for attorney John Timbo (admitted in 1996), both of whom have practiced mainly in civil rights.

Plaintiffs' attorneys have not sufficiently supported their requested rates with appropriate evidence. Unlike the cases plaintiffs have cited in which courts deemed a higher rate appropriate, here plaintiffs have produced only affidavits from themselves and from one attorney who opines that their rates are reasonable. They have not produced, for example, invoices or contracts indicating that clients have paid them those rates, or cases in which a court has awarded them those rates, or affidavits from similarly situated attorneys who state their own rates. And although they are experienced, they do not specialize in civil rights litigation, as the attorneys in *Delgado* did, nor are they a part of a large national law firm that commands a higher-than-average rate, like the attorneys in *Entm't Software*. Nor was the case unusually complex. In light of the lack of evidence that Smith and Genson command these rates, and the relevant case law, the court finds the defendants' proposed rates of $300 for Smith and $225 for Genson to be more appropriate.

### C. Hours

Smith has documented 353.75 hours, and Genson 271.4 hours, for the duration of the litigation. Defendants attack these figures on several grounds. Several of their arguments attack the reasonableness of the hours in light of the results achieved, however, and those arguments are more properly viewed as arguments to reduce the lodestar. Accordingly, those arguments are dealt with in the next section. In this section, the court analyzes whether the hours were properly

expended, that is, whether they were excessive, redundant, or otherwise unnecessary. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The defendants argue that Genson's hours during the trial should be reduced by 50% because Genson did not argue before the jury but rather attended trial and assisted Smith in preparing for his examinations of witnesses. It is not unreasonable to have two attorneys work on the case, particularly during trial when the attorneys need to assess what has transpired, prepare for the next days' events, and continually reevaluate their strategy. Two lawyers might be unnecessary for straightforward hearings, but a trial—even a trial on a relatively straightforward question—is more complex and significant than the average status hearing, for example. *See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 525 (7th Cir. 1995).[2] Nevertheless, two lawyers billing a total of 309 hours to prepare for and conduct an 8-day trial is excessive. The court agrees that some reduction in Genson's 157 hours is appropriate, and accordingly reduces that figure by 25%, subtracting 39.25 hours.

The defendants also argue that Genson's hours for depositions are unreasonable because Smith took the depositions and Genson observed. A deposition is not as complex and significant as a trial, and one lawyer should be able to handle a deposition. As outlined in the defendants' response, the court reduces Genson's hours by 19.9 to remove the redundant hours.

Defendants next protest the 8.5 hours Smith expended obtaining the case file from Elusta's prior counsel (which including time spent preparing a motion to compel). Defendants cite no authority suggesting that it is appropriate for the court to analyze which of counsel's hours were directly "caused" by the defendants during the litigation. If the plaintiffs had acted

---

[2] The other decision defendants cite is not to the contrary, but in any event, that decision was vacated on reconsideration. *Robinson v. City of Harvey*, No. 99 C 3696, 2004 WL 2033714 (N.D. Ill. 2004) (recognizing that it is reasonable to send more than one lawyer to some, but not all, hearings), *motion for reconsideration granted in* 2004 WL 2392009 (N.D. Ill. Oct. 22, 2004).

unreasonably and thereby created the need to expend extra hours, that might support reducing the award, but defendants do not make that argument. *Cf. Shott v. Rush-Presbyterian-St. Luke's Medical Center*, 333 F.3d 736, 740 (7th Cir. 2003) (noting authority that plaintiff's attorney may receive fees for second trial so long as plaintiff's action did not produce the need for the second trial). It appears that the hours were necessary and not unreasonable; as such they are included.

The defendants also argue that hours spent on plaintiffs' claims against Robert Rubio should be excluded, explaining that although plaintiff prevailed against Rubio on a state law IED claim, that claim does not trigger attorneys' fees. The court agrees that since Rubio is not liable for attorneys' fees under the statute, it is inequitable to force the remaining defendants to pay for time expended solely on claims against Rubio. Defendants have outlined the hours that can be traced directly to the claims against Rubio, and the court reduces Smith and Genson's hours accordingly. That results in a reduction of 12.75 hours for Smith and 37.1 hours for Genson.

Elusta includes in his fee petition $318.75 for his law clerk or paralegal, Patricia Meinke: 4.25 hours billed at a rate of $75 per hour. The defendants state that they do not oppose these fees. (Jt. Stmt. of Fee Pet., Dkt. 256, at 2.)

The following calculations sum up the lodestar amount:

| | |
|---|---|
| Zane Smith: $300 per hour × 341 hours = | $102,300 |
| Sheila Genson: $225 per hour × 175.15 hours = | $39,408.75 |
| Patricia Meinke (paralegal): $75 per hour × 4.25 hours = | $318.75 |
| | $142,027.50 |

### D. Adjustment to Lodestar Amount

The fee yielded by the lodestar method is strongly presumed be a reasonable one. *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010); *City of Burlington v. Dague*, 505 U.S.

557, 562 (1992). However, it does not end the inquiry: other considerations may counsel toward adjusting the lodestar amount upward or downward. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010); *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856-57 (7th Cir. 2009).

One such consideration is whether the number of hours is reasonable in terms of the results achieved. If the plaintiff did not prevail on all of his claims, the court excludes the hours spent on any unsuccessful claims that are unrelated to the successful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987). If the claims stem from the same core of facts or are based on related legal theories, then the court does not exclude the additional hours, but determines what number of hours is reasonable in light of the result achieved. *Moriarty v. Svec*, 233 F.3d 955, 964 (7th Cir. 2000); *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998).

Defendants argue that the plaintiffs' unsuccessful claims do not derive from the same core of facts, and therefore that time expended on those claims should be excluded. The plaintiffs' claims in this suit arose from two incidents: the August 5, 2005 incident in which Elusta was arrested and beaten, and incident more than a year later, on August 22, 2006, in which police searched the Elusta home. The jury found for Elusta on the excessive force and IED claims related to the first incident, but found against all of the plaintiffs on the claims based on the second incident. The facts concerning the second incident were not necessary in order to prove the first, and though plaintiffs' theory was of continuing misconduct, the jury apparently did not believe that the misconduct continued. Because the claims on which defendants prevailed were based on a second event, occurring a year later, and mainly involving different officers, and the facts surrounding this event did not play a role in Elusta's successful claims, the

court agrees with defendants that hours spent solely on these claims are not compensable. Defendants identify 14 hours of Smith's time that was devoted solely to the claims based on the second incident, and so those hours are deducted from Smith's hours, resulting in a total of 327 hours for a fee of $98,100 for Smith and a total fee of $137,827.50 for all of plaintiffs' lawyers.

Defendants also argue that the lodestar amount should be reduced based on the plaintiff's "limited success." They rely on the factors discussed in *Farrar v. Hobby*, 506 U.S. 103 (1992) and cases following it, asking the court to look at the difference between the amounts requested and received, the significance of the legal issues, and the public purpose served. (Dkt. 257, p. 12.) But that analysis only applies to cases in which the plaintiff recovers a nominal sum: "In cases in which the recovery is not merely nominal . . . the *Farrar* analysis is not relevant. In cases which involve more than a nominal award, we have rejected the notion that the fee award should be reduced because the damages were smaller than a plaintiff originally sought or that the fee award might, in fact, be more than the plaintiff's recovery." *Ex. rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009); *see also Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545-47 (7th Cir. 2009). Here, $20,000 is hardly a "nominal" recovery on a §1983 claim—it is a very significant recovery. Accordingly, the *Farrar* analysis is inapplicable.

When the recovery is more than nominal, to determine whether the lodestar amount should be adjusted the court looks to the factors from *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Enoch*, 570 F.3d. at 823. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. 430 & n.3, 435 & n. 9. One of the most significant factors is the amount involved and results obtained. *Hensley*, 461 U.S. at 434-35, 440, *Enoch*, 470 F.3d at 824. If the fee is not reasonable in light of the results obtained, the court may cut unnecessary hours or reduce the total fee to reach a reasonable number.

Elusta had difficulty finding an attorney, trying the case took a significant amount of time and labor, and Smith worked on a contingency fee, so he risked not being paid for his time. On the other hand, for the most part the case was not so all-encompassing as to preclude other employment for its duration. In considering the most significant factor, the amount involved and the results obtained, the court views the suit as a whole, and thus considers whether the lodestar amount is reasonable considering Elusta's total recovery of $40,000 ($20,000 for the § 1983 excessive force claim and 20,000 for the state IED claim based on the same facts). Although Elusta received more than a nominal recovery, the jury substantially cut the amount of compensatory damages he received, despite his claims of severe injuries. The jury also denied relief on a number of his claims, and denied relief on all of the claims of the other three plaintiffs. In addition, the court disposed of several more claims before the case even got to the jury. It is simply not reasonable to award hundreds of thousands of dollars in attorneys' fees when the plaintiff succeeded on only a limited number of his claims and recovered only $40,000 total; the recovery is not consistent with the overall scope of the litigation. At this point the overall fee for plaintiffs' lawyers is $137,827.50. The court reduces that award by 40% for a total award of $82,696.50.

Defendants add in their sur-reply that the fees should be reduced because they offered to settle the case for $100,000, and amount that exceeded the plaintiffs' eventual recovery of $40,000. Substantial settlement offers are a relevant factor, see *Shott v. Rush-Presbyterian-St. Luke's Medical Center*, 333 F.3d 736, 744 (7th Cir. 2003), but defendants did not develop an argument on that point until their sur-reply, and even then they did not propose any specific reduction. Accordingly, the argument is waived. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

In summary, the court awards plaintiffs' current attorneys fees totaling $82,696.50.

## II. Costs

As a prevailing party, Elusta is entitled to recover his costs from the defendants. Fed. R. Civ. P. 54(d)(1); *Anderson v. Griffin*, 397 F.3d 515, 520 (7th Cir. 2005). Items taxable as costs include fees of the clerk, fees for necessary transcripts, fees for printing, fees for witnesses, and fees for necessary copying. 28 U.S.C.A. § 1920; *Anderson*, 397 F.3d at 520. These costs are recoverable so long as they were reasonable and necessary. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 946 (7th Cir. 1997). Elusta has submitted a bill of costs totaling $5,904.60, of which defendants dispute $1207.

First, defendants contend that they should not have to pay for a deposition transcript for Aaron Cunningham because the plaintiffs did not prevail with respect to their claim concerning Cunningham. But deposition costs—including transcripts—are covered costs, *see* 28 U.S.C.A. § 1920, so long as they appeared "reasonably necessary" to the case at the time they were taken. *Cengr v. Fusibond Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998). Cunningham was a defendant and the claim against him ultimately went to trial, so this cost was reasonably necessary at the time. Plaintiffs were not required to predict the jury's verdict on that claim.

Defendants also contend that they should not have to pay the cost of serving a summons on Rubio because he was not a City of Chicago employee at the time and because his existence as a party defendant, they say, was unnecessary to secure a judgment against the officers. They cite no authority for this proposition. This objection is overruled.

Defendants next object to costs for skip tracing one potential witness, Maggie Cannon, and serving a subpoena to another, Matias Padilla, because the former was never located and neither ever provided a deposition. Fees for subpoenas and service of process are generally recoverable as costs, *see Collins v. Gorman*, 96 F.3d 1057 (7th Cir. 1996), but not for a deposition witness who is never deposed. *Kateeb v. Dominick's Finer Foods, Inc.*, No.96 C 1229, 1997 WL 630185, at *2 (N.D. Ill. 1997) (citing *James v. Plainfield*, No. 92 C 6442, 1994 WL 148673, at *2 (N.D. Ill. 1994). If the witness was never deposed, the costs were not necessary. This is particularly true of the fees concerning Maggie Cannon, whose only connection to the case was that she was the former girlfriend of Rubio. Accordingly, the fees to trace Cannon ($165) and to serve Padilla ($60) are deducted from the bill of costs.

As a final matter, there is some confusion as to which of these costs were paid by Cerda and De Leon and which were paid by Smith and Genson. Because Smith and Genson submitted the petition, costs go to them, but if they did not actually pay for some of those costs, the court trusts that they will reimburse Cerda and De Leon.

Plaintiffs' costs are thus taxed against defendants in the amount of $5679.60.

### III. Motion to Adjudicate Lien

Nearly two years after final judgment was entered in this case, Elusta's former attorneys, David Cerda and John De Leon, filed a motion asking the court to adjudicate their lien. They argue that they have a lien against plaintiff for attorneys' fees in the amount of $91,050 (for

237.20 hours of legal work), and ask the court to transfer plaintiffs' entire recovery to them. They base this argument on their agreement with Elusta, which stated that if the client terminated the agreement, he would pay Cerda at least $375 per hour and De Leon at least $425 per hour. (Dkt. 287, Ex. A.) In the alternative they assert a quantum meruit theory. Furthermore, in their reply they assert that they seek "any section 1988 fees generated by Mr. Smith," plaintiffs' current attorney. Plaintiffs' current attorneys respond that the lien was not perfected and argue that the former attorneys are not entitled to fees.

First there is a question of jurisdiction. An attorney's lien is a creature of state statute, and as such does not independently invoke federal jurisdiction. *See Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 575-77 (7th Cir. 2005). However, supplemental jurisdiction is appropriate because the attorneys' lien relates to the underlying litigation, over which the court does have jurisdiction. *Clarion Corp. v. Am. Home Prods. Corp.*, 464 F.2d 444, 445 (7th Cir. 1972); *see also Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1298-30 (7th Cir. 1995). Accordingly, since the asserted lien is against the judgment for Elusta and the matter of fees was still pending, this court has jurisdiction to adjudicate the lien.

To perfect an attorneys' lien under Illinois law, the attorney must comply with several requirements set forth under 770 ILCS 5/1. Strict compliance is required; "[a]ttorneys who do not strictly comply with the Act have no lien rights." *People v. Phillip Morris, Inc.*, 759 N.E.2d 906, 911 (Ill. 2001). First, the attorney must have been hired by the client to assert a claim. *Phillip Morris*, 759 N.E.2d at 911. Second, the attorney must perfect the lien by serving notice of the lien on "the party against whom the client has a claim"—here, the defendants. *Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969, 973-74 (Ill.1979); *Phillip Morris*, 759 N.E.2d at 911; 770 ILCS 5/1 ("To enforce [an attorney's] lien, such attorneys shall serve notice in writing, which

service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action."). Because the lien attaches to the cause of action the attorney is hired to pursue, the lien must be perfected (that is, the notice must be served) during the pendency of the attorney-client relationship. *See Rhoades*, 399 N.E.2d at 973-74. The attorney asserting the lien bears the burden of showing that he has strictly complied with the Act. *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 911 N.E.2d 1180, 1186 (Ill. App. Ct. 2009).

Cerda and De Leon seem to argue that they satisfied the notice requirement on March 25, 2008 because the court stated in a minute order, "[a] lien by Cerda and De Leon will attach to any proceeds obtained," and that order was sent to the attorneys of record in the case. But five months before, in October 2007, Cerda and De Leon had been granted leave to withdraw from the case, terminating their attorney-client relationship with Elusta. (Dkt. 105.) So notice in March 2008 was not during the attorney-client relationship and was thus too late to perfect the lien. To the extent that they are construing the court's minute order to establish that they had perfected their lien, they are mistaken; that question was not before the court at that time. The minute order was issued to compel Cerda to turn over his former clients' file, and merely recognized that he claimed a lien. None of the papers filed with the court on those motions addressed the perfection of the lien or submitted evidence on that issue. Accordingly, since their lien was not perfected, the lien does not entitle the former attorneys to relief under the statute.

To the extent that Cerda and De Leon also assert that they have an equitable lien, their argument is too undeveloped to warrant addressing. Again, they bear the burden of establishing their right to relief, and have not done so.

To the extent that Cerda and De Leon argue that, as a matter of contract, they are entitled to be paid at a certain rate, they have not established that the contractual trigger was met. The

contract specifies that if the client terminates the agreement, the client will pay Cerda and De Leon at least $375 per hour and $425 per hour, respectively, for their time. But Cerda and De Leon have not established that Elusta terminated the agreement. They filed a motion to withdraw, citing an irreconcilable conflict, and the court granted that motion.

Cerda and De Leon next argue that they are entitled to compensation based on quantum meruit. Illinois law allows recovery to attorneys who were discharged without cause or who withdrew from the case "for good cause." *McGill v. Garza*, 881 N.E.2d 419, 422 (Ill. App. Ct. 2007); *see also Kannewurf v. Johns*, 632 N.E.2d 711, 714 (Ill. App. Ct. 1994). A withdrawal for good cause includes a withdrawal based on a breakdown in the attorney-client relationship, including a situation in which the client does not want to negotiate in the manner that the attorney thinks best. *McGill*, 881 N.E.2d at 422; *Kannewurf*, 632 F.3d at 714. In granting Cerda and De Leon's motion to withdraw, this court found that the relationship had broken down. As such, the circumstances of the attorneys' withdrawal do not preclude their recovery of fees.

Under a quantum meruit theory, the attorney may recover the value of the services he provided. *In re Estate of Callahan*, 578 N.E.2d 985, 988-89 (Ill. 1991); *Rhoades*, 399 N.E.2d at 274-75. Quantum meruit is meant to prevent unjust enrichment, so the attorney does not recover the full contract value but only the "reasonable value" of the services provided. *Id.* The "reasonable value" is a case-specific question, for "it is possible for someone to receive services and yet not be enriched in any tangible way at all." *Id.* at 989. In other words, the attorney earns "as much as he deserves." *Patterson v. Burge*, No. 03 C 4433, 2008 WL 4875791, at *3 (N.D. Ill. Aug. 4, 2008) (quoting *Wegner v. Arnold*, 713 N.E.2d 247, 250 (Ill. Ct. App. 1999). Factors the court considers include "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of

responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the clients." *Kannewurf*, 632 F.3d at 717. Illinois has rejected a "comparison/apportionment" approach, so the court does not attempt to award the former and successor attorneys an amount proportionate to their contribution. *DeLapaz v. SelectBuild Constr., Inc.*, 917 N.E.2d 93, 98 (Ill. App. Ct. 2009).

The time and labor required was not insignificant: Cerda and De Leon did take the case through the initial investigation, filing the complaint, and the beginning of discovery. They say they spent 237.2 hours on the case over nearly two years. Their work benefitted their clients by moving the case along towards an ultimate resolution. But they did not withdraw just before resolution of the case; far from it. Though they attempted to settle the case, the settlement fell apart, seemingly because of communication problems with their clients. Elusta thought the settlement amount offered was just for him, not for the whole family. And, as the magistrate judge found, Cerda and De Leon failed to consult all of the adult plaintiffs about the settlement offer, apparently because they did not realize that one of Elusta's daughters is an adult. This suggests that the attorneys' degree of responsibility in managing the case could have been better. Also, as discussed in the previous section, the novelty and difficulty of the case was not great, particularly in the early stages when Cerda and De Leon were working on it.

The usual and customary fee is nowhere close to what Cerda and De Leon suggest. In their motion, they say that their rates are $375 and $425 per hour, respectively, and in their attached schedule of fees, they list them at $475 for Cerda and $500 for De Leon. As discussed in connection with Smith's fee petition, either set of rates are well above the market rate for a civil rights attorney, and thus well above the usual and customary rate for similar work. As discussed above, the usual and customary rate for attorneys in this field would be closer to what

Smith is receiving, $300 per hour.  In the court's judgment, that rate is still high for recovery on a quantum meruit basis, given that the work at this stage of the case was not as intensive, and in consideration of the circumstances under which the attorneys withdrew.  Furthermore, Cerda and De Leon did not enter the contract expecting to be paid at these rates—they expected to recover a contingent fee equivalent to 40% of the recovery.  In addition, some of the requested fee on the fee schedule is for the work of David Breed, who Cerda and De Leon do not identify (or even mention) in their motion.  The fee schedule submitted lists his rate as $175.  Several of the tasks he has billed for seem consistent with those assigned to a paralegal than an attorney (e.g., tagging unreadable documents, making a copy of a DVD).  In light of that, the customary rate for these services is closer to the uncontested rate for Mienke, $75.

In light of these considerations, the court determines that Cerda, De Leon, and Breed are entitled to recover $15,000 for their services before their withdrawal.

## CONCLUSION

Smith and Genson's petition for fees is GRANTED to the extent that they are awarded a total of $82,696.50.  Plaintiffs' costs are taxed against defendants in the amount of $5679.60.  Cerda and De Leon's motion to adjudicate the lien is GRANTED in part and DENIED in part.  The court determines that they do not possess a valid lien.  However, because they did render services to Elusta, they are entitled to a quantum meruit recovery of $15,000.

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

**Dated:** December 13, 2010