**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORAD ELUSTA et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 06 C 4264 |
| v. ) | |
| ) | |
| CITY OF CHICAGO et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On December 13, 2010, the Honorable David A. Coar issued a comprehensive ruling on Plaintiff Morad Elusta's attorneys' fees in this civil rights case. Plaintiff Morad Elusta ("Elusta") now brings the present motion to direct payment of those attorneys' fees. In connection with Elusta's motion, his first attorneys – David Cerda ("Cerda") and John DeLeon ("DeLeon") – ask the Court to reconsider Judge Coar's ruling as to their fees. For the reasons discussed below, the Court denies Cerda and DeLeon's motion to reconsider and directs the court-awarded payments as follows: attorney's fees under 42 U.S.C. § 1988 are awarded to Zane D. Smith & Associates, Ltd. and Sheila A. Gelson, and Elusta is liable to Cerda and DeLeon for the $15,000.00 award in *quantum meruit*.

**BACKGROUND**[1]

On February 16, 2006, Elusta retained attorneys Cerda and DeLeon to bring a civil rights lawsuit on his behalf against Defendant City of Chicago ("City") and individual defendant

---

[1] The Court presumes the parties' familiarity with the factual background of this case. Therefore, it recites only the facts that are relevant to the underlying motion.

Chicago police officers. Elusta entered into a contingent fee agreement with Cerda and DeLeon which set forth the agreed terms of the representation. The case appears to have come close to settling in August 2007, but those efforts ultimately failed. On October 9, 2007, Cerda and DeLeon filed a motion to withdraw as counsel on the grounds that a conflict had arisen that put them in an adverse relationship with Elusta. Judge Coar conducted a motion hearing on October 31, 2007, and granted counsel's motion to withdraw.

Soon thereafter, Elusta retained the law firm of Zane D. Smith & Associates, Ltd. ("Smith") to represent him in his lawsuit. The law firm of Sheila A. Genson ("Genson") was retained as joint counsel. As provided in the Attorney-Client Agreement, Elusta agreed to pay Smith "[a] sum equal to 40% of the gross amount recovered from the claim by judgment or settlement" in consideration for his services. (R. 261-2, Attorney-Client Agreement.) Elusta also acknowledged his "understanding of and consent to the fact that SHEILA A. GENSON and ZANE D. SMITH & ASSOCIATES, LTD., will divide the attorney's fees recovered in [Elusta's] claim." (*Id.*) Smith and Genson took the case to trial in October 2008. Following an eight day jury trial, Elusta prevailed on his § 1983 excessive force claim and on his state law claim of intentional infliction of emotional distress (as to one of the defendant officers). The jury awarded Elusta compensatory damages of $20,000 for each claim, for a total award of $40,000. Judge Coar entered judgment consistent with the verdict on October 16, 2008.

On October 30, 2008, Smith and Genson petitioned the court for attorneys' fees pursuant to 42 U.S.C. § 1988.[2] Elusta apparently retained a third set of attorneys, Donald L. Johnson and

---

[2] The jury's verdict on the § 1983 excessive force claim permitted Elusta to petition the court for fees under § 1988.

Joseph T. Gentleman ("Johnson and Gentleman"), to litigate the apportionment of those fees, because on March 18, 2009 – before Judge Coar had ruled on the fee petition – Elusta filed a motion to direct payment of the attorney's fees. *See* R. 261 (3/18/09 Motion to Direct Payment and for Other Relief). Judge Coar denied Elusta's motion without prejudice as premature. (R. 264, 3/20/09 Minute Entry.) Nearly sixteen months later, Cerda and DeLeon filed two fee-related motions with the court. *See* R. 287 (7/8/2010 Motion to Adjudicate Lien); R. 288 (7/8/2010 Motion to Set Schedule for Filing Fee Petition).

On December 13, 2010, Judge Coar issued a lengthy and thorough ruling on Elusta's fee petition and on Cerda and DeLeon's motions. *See* R. 300 (12/13/10 Mem. Op. & Order). In that ruling, Judge Coar granted Smith and Genson $82,696.50 in attorney's fees under § 1988.[3] Judge Coar also ruled that although Cerda and DeLeon's proffered attorney's lien was invalid, they were entitled to recover $15,000.00 in *quantum meruit* for their services.

On December 23, 2010, Elusta re-filed his motion to direct payment and for other relief, updated to reflect the fees recently awarded by Judge Coar.[4] In his motion, Elusta asks the Court to direct 60% of all of the attorneys' fees granted by Judge Coar – those granted for the work done by Smith and Genson, as well as the *quantum meruit* award to Cerda and DeLeon – to him, personally, with the remaining 40% to be paid to the respective attorneys. Elusta contends that the clear language of his retainer agreements with each set of attorneys compels that result.

---

[3] Pursuant to Fed. R. Civ. P. 54(d)(1), Judge Coar also taxed costs of $5,679.60 against the defendants. None of the parties contest this award in their briefs, and Defendant City of Chicago represents that the parties agree on the resolution of those costs.

[4] The case was reassigned to this Court on February 25, 2011. (R. 309, Executive Committee Order.)

Elusta also disavows any liability for Cerda and DeLeon's *quantum meruit* recovery, arguing that the City should bear the burden of those costs. Smith and Genson object to Elusta's motion and argue that their retainer agreement clearly sets forth their right to the entirety of the attorney's fees. Cerda and DeLeon object to Elusta's motion on several grounds, as discussed in more detail below, and ask the Court to reconsider Judge Coar's ruling as to their fees. The City takes no position on the allocation of the court-awarded attorneys' fees, but does object to Elusta's suggestion that the City must bear the financial burden of Cerda and DeLeon's award. The Court has jurisdiction to resolve this dispute pursuant to 28 U.S.C. § 1367.

## ANALYSIS

Disputes over attorney's fees are never pleasant, and this case provides no exception. Given the tumultuous history of this case, however, it comes as little surprise that Elusta is before the Court on this issue. As early as October 2007, when it appeared the parties might reach a settlement agreement, the record in this case shows that Elusta was sufficiently upset by the amount his first attorneys would have recovered pursuant to their retainer agreement that it was preventing him from signing the agreement or maintaining productive communications with his attorneys.[5] Elusta voiced that dissatisfaction on the record, in open court, acknowledging the good work that his attorneys had done but expressing frustration at the amount they would recover under the terms of their contingency fee agreement. *See* R. 111-9, Transcript of 10/25/07 Status Hrg. Magistrate Judge Cox offered to mediate their fee dispute, and that option initially appeared to present a hopeful resolution to the matter. The mediation did not ultimately

---

[5] Pursuant to the parties' contingent fee agreement, Cerda and DeLeon would receive 40% of the settlement agreement plus all attorney's fees recovered under 42 U.S.C. § 1988. R. 301-1, Contingent Fee Agreement.

go forward, however, and Cerda and DeLeon withdrew from the case. It is clear from the record that Elusta's dissatisfaction with the contingency fee agreement led, at least in part, to the breakdown of his relationship with Cerda and DeLeon.

By Elusta's own admission, he experienced challenges trying to find an attorney to replace Cerda and DeLeon. "[T]he case was rejected by several attorneys prior to [Smith and Genson] accepting the case. Despite uncertainties involved with the issues in this case, counsel agreed to accept the case on a contingent basis and expended over 650 hours on the prosecution of this matter. In expending such a large amount of time on this matter in such a shortened period counsel showed a significant commitment to the prosecution of Plaintiff's case which prevented counsel from applying those hours to other cases." (R. 231, Elusta Fee Petition, at 4.) Given these facts, one might have thought that Elusta's fee-related concerns had abated once he retained Smith and Genson. Not so.

While his fee petition was pending before Judge Coar, Elusta retained a third set of attorneys – Johnson and Gentleman – to litigate the terms of his retainer agreement with Smith and Genson. As part of his reply brief on the underlying motion, Elusta submits a letter that Johnson and Gentleman sent to Smith and Genson in this regard. Dated December 17, 2008, the letter sets forth Elusta's position that his contingency fee agreement with Smith and Genson entitles them to 40% of all monies recovered from the lawsuit, including an award of attorney's fees. It demands that Smith and Genson respond within 48 hours of their receipt of the letter and warns that failure to respond within that time frame will force them to consider "all of the options" available to Elusta, explaining further, "You should be aware that one option available is for [Elusta] to order you to dismiss the fee petition because the fee petition is a right of the

5

clients and you have no standing to bring such a claim." *See* R. 307-1, Ex. 2 to Elusta Reply, at 9. Smith and Genson appear not to have responded to the letter. *Id*. at 10 (12/23/08 Johnson Letter to Smith and Genson). With Johnson and Gentleman appearing on his behalf, Elusta then filed a motion before Judge Coar to direct payment of attorney's fees. Since Judge Coar had not yet ruled on the fee petition, he dismissed Elusta's motion as premature. On December 13, 2010, Judge Coar issued his fee petition ruling. Ten days after that ruling, Elusta filed the instant motion.

**I.      Cerda and DeLeon**

In his ruling, Judge Coar awarded Cerda and DeLeon $15,000.00 in *quantum meruit* for the services they provided Elusta prior to their withdrawal from the lawsuit.[6] Elusta now asks the Court to (i) abide by the term of his contingent fee agreement with Cerda and DeLeon which, he submits, would award them only 40% of that recovery, (ii) direct that the remaining 60% of the award be paid directly to him, and (iii) hold the City liable for payment of the *quantum meruit* award. In their response – filed with permission of the Court on March 13, 2011, eight weeks after responses were due and six weeks after the briefing on the motion had closed – Cerda and DeLeon ask the Court, for the first time, to reconsider Judge Coar's ruling as it pertains to their fees. In the alternative, they object to Elusta's motion and urge the Court to direct the entirety of the $15,000 award to them. The City objects to Elusta's motion to the extent it asks the Court hold it financially responsible for the $15,000 *quantum meruit* award.

---

[6] In fact, Judge Coar awarded the *quantum meruit* recovery to Cerda, DeLeon, and David Breed. Breed appears to be Cerda's legal assistant. Although the Court will reference only Cerda and DeLeon in this ruling, Breed remains a recipient of that *quantum meruit* award, as ordered by Judge Coar.

### A. Cerda and DeLeon's motion for reconsideration fails

Cerda and DeLeon ask the Court to reconsider Judge Coar's ruling that their attorney's lien was invalid. Cerda and DeLeon make this request pursuant to Federal Rule of Civil Procedure 59. As an initial matter, Rule 59 offers them no recourse for reconsideration – they cannot seek to amend a judgment because the Court has not entered judgment on attorney's fees.[7] Even had they rightly brought their motion under Rule 60(b), however, and sought relief from Judge Coar's order, they provide no argument or case law to support a motion for reconsideration.

"[R]elief under Rule 60(b) is 'an extraordinary remedy and is granted only in exceptional circumstances.'" *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009) (quoting *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (citations omitted)). *See also Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009); *Cash v. Ill. Div. of Mental Health*, 209 F.3d 695, 698 (7th Cir. 2000) (in general, Rule 60 only lets courts "overturn decisions where 'special circumstances' justify an 'extraordinary remedy.'"). Rule 60(b) provides for relief for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). When deciding whether to grant relief under Rule 60(b), district courts have "great latitude ... because that decision 'is discretion piled on discretion.'"

---

[7] Had they believed Rule 59 to be the appropriate mechanism, Cerda and DeLeon should have noted that any such motion would need to be filed no later than 28 days after entry of judgment. Fed. R. Civ. P. 59(e). Furthermore, even if the Court could consider Cerda and DeLeon's motion under Rule 59(e), they would not prevail. Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence. *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) (citing *Sigsworth v. City of Aurora*, 487 F.3d 506, 511-12 (7th Cir. 2007)). Cerda and DeLeon have done neither.

*Bakery Machinery*, 570 F.3d at 848 (quoting *Swaim v. Motan Co.*, 73 F.3d 711, 722 (7th Cir. 1996) (citations omitted)).

Here, Cerda and DeLeon do no more than state, in sum and substance, "the earlier decision was wrong." They cite no authority, develop no actual argument, and fail to identify the basis on which the motion for reconsideration is grounded. This argument – to the extent it constitutes an argument – is clearly insufficient under Rule 60. Cerda and DeLeon have simply re-stated the facts of the case, which Judge Coar considered and thoroughly analyzed in his ruling. In its discretion, the Court denies Cerda and DeLeon's motion to reconsider Judge Coar's ruling.

      **B.**      **Cerda and DeLeon are entitled to the full $15,000 award in *quantum meruit***

Elusta asks the Court to award Cerda and DeLeon only 40% of the $15,000 award, in accordance with their retainer agreement. Elusta argues that the remainder belongs to him. As an initial matter, *quantum meruit* is intended to prevent unjust enrichment. *In re Estate of Callahan*, 144 Ill.2d 32, 578 N.E.2d 985, 161 Ill.Dec. 339 (Ill. 1991). It is based on the implied promise of a recipient of services to pay for those services of value to him – the recipient would be unjustly enriched if he were able to retain the services without paying for them. *Id.* at 40. Under this theory, "the trial court is literally to award the attorney 'as much as he deserves.'" *Wegner v. Arnold*, 305 Ill.App.3d 689, 693, 713 N.E.2d 247, 238 Ill.Dec. 1001 (Ill. App. Ct. 1999) (citing *Kannewurf v. Johns*, 260 Ill.App.3d 66, 74, 632 N.E.2d 711, 198 Ill.Dec. 381 (Ill. App. Ct. 1994)). Elusta's contention that he should be enriched by a financial award that is explicitly granted to prevent his unjust enrichment defies logic. Furthermore, even if the Court were to overlook this flaw in his argument, Elusta provides no authority to support his implicit

argument that the specific "40%" contingency fee term in the parties' retainer agreement continues to bind Cerda and DeLeon. Elusta appears to be cherry picking terms of an agreement that is no longer binding between the parties to provide the most favorable possible outcome to him. The Court denies Elusta's motion as to this argument.

### C.    Elusta is liable for the *quantum meruit* award to Cerda and DeLeon

Finally, Elusta contends that the City should be liable for Cerda and DeLeon's recovery because "all of the attorneys [including Cerda and DeLeon] sought fees based upon a statute." R. 301, Elusta Motion, at 5. Elusta also claims it would be "manifestly unfair for a victorious plaintiff to have to pay attorney fees when a statute specifically provides that attorney fees should be paid by the losing party." R. 316, Elusta Reply to Cerda Resp., at 3. These arguments fail.

Judge Coar did not award Cerda and DeLeon attorney's fees pursuant to 42 U.S.C. § 1988. Rather, he awarded them recovery in *quantum meruit*, to prevent Elusta's unjust enrichment for the services Cerda and DeLeon provided during their nearly 18-month representation. Elusta is liable to Cerda and DeLeon[8] for the $15,000 *quantum meruit* award.[9]

---

[8] Again, the Court notes that the award in *quantum meruit* is awarded to Cerda, DeLeon, and Breed.

[9] In their response brief, Smith and Genson suggest that they may not claim the 40% contingency fee that they are entitled to in their contractual fee agreement. The Court takes no opinion on the matter, but suggests that this may be one avenue for the parties to explore, since 40% of $40,000 (the damages awarded at trial) is $16,000. This arrangement would, of course, be subject to Smith and Genson's approval. There appears to be some precedent for this type of approach. *See Patterson v. Burge*, No. 08 C 4433, 2008 WL 4875791 (N.D. Ill. Aug. 4, 2008); *Wegner*, 305 Ill.App.3d at 697; *Tobias v. King*, 84 Ill.App.3d 998, 1003, 406 N.E.2d 101, Ill.Dec. 400 (Ill. App. Ct. 1980). In any event, Elusta owes Cerda and DeLeon the $15,000 award.

**II.    Smith and Genson**

Pursuant to 42 U.S.C. 1988, Elusta filed a post-trial fee petition seeking attorney's fees incurred in connection with the litigation of his successful § 1983 excessive force claim. Judge Coar considered Elusta's fee petition and awarded $82,696.50 for the work performed by Smith and Genson. Elusta now asks the Court to direct 60% of those attorney's fees to himself, with the remaining 40% awarded to Smith and Genson. Elusta contends that the contingent fee agreement which dictates the terms of his relationship with Smith and Genson only permits them to recover 40% of the court-awarded attorney's fees. The Court does not agree.

The Court first notes that Elusta's opening brief misrepresents the terms of his fee agreement with Smith and Genson (hereinafter, "Agreement"). Elusta proffers a single sentence in the Agreement as representing the entirety of their Agreement. That sentence describes the fee agreement as stating only that Smith and Genson are entitled to "[a] sum equal to 40% of the gross amount recovered from the claim by settlement or judgment." R. 301, Elusta Motion, at ¶ 5. Elusta ignores a crucial provision within the Agreement, which reads as follows:

> The Client(s) acknowledges that his/her understanding of and consent to the fact that representation will be jointly by the law firms of SHEILA A. GENSON and ZANE D. SMITH & ASSOCIATES, LTD., and that each firm and/or attorney is jointly responsible to the Client(s) under the terms of this Agreement. *Furthermore, the Client(s) acknowledges his/her understanding of and consent to the fact that SHEILA A. GENSON and ZANE D. SMITH & ASSOCIATES, LTD., will divide the attorney's fees recovered in the Client's claim.*

R. 301-1, Attorney-Client Agreement (italics added). Elusta makes no mention of the attorney's fees language in his opening brief. To the contrary, Elusta claims the contract is "completely silent" as to attorney's fees. R. 301, Elusta Motion, at ¶¶ 9, 11. Ignoring that language, Elusta

10

contends that his attorneys should only be entitled to recover 40% of their court-awarded attorney's fees, and he should receive the remaining 60%.

Elusta's argument that attorney's fees under § 1988 belong to the prevailing *party* (not the party's attorney) in a section 1983 lawsuit is undisputed by the parties and is well-settled law. *See, e.g., Venegas v. Mitchell*, 495 U.S. 82, 87, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); *Evans v. Jeff D.*, 475 U.S. 717, 730-32, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *Stive v. United States*, 366 F.3d 520, 523 (7th Cir. 2004). Elusta also correctly notes that *Venegas* and its progeny grant a prevailing party the right to waive, settle, or negotiate her eligibility to those fees. As the *Venegas* Court stated, however, "§ 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. … Section 1988 itself does not interfere with the enforceability of a contingent-fee contract." *Venegas*, 495 U.S. at 90.

Because Elusta's claim turns on the interpretation of his contractual fee agreement, the Court looks to Illinois contract law for guidance. *In re Solis*, 610 F.3d 969, 972 (7th Cir. 2010). The Court's primary objective in construing a contract is to give effect to the intent of the parties. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) (citing *Vill. Of South Elgin v. Waste Mgmt. of Ill., Inc.*, 348 Ill.App.3d 929, 810 N.E.2d 658, 284 Ill.Dec. 868 (Ill. 2004)). Where a contractual release is clear and explicit, the court must enforce it as written. *Id.* (citing *Rakowski v. Lucente*, 104 Ill.2d 317, 472 N.E.2d 791, 84 Ill.Dec. 654 (Ill. 1984)); *see also Krilich v. Am. Nat'l Bank & Trust Co. of Chicago*, 334 Ill.App.3d 563, 778 N.E.2d 1153, 268 Ill.Dec. 531 (Ill. App. Ct. 2002) (the court must not interpret contractual language in a way contrary to the plain, obvious, and generally accepted meaning of its terms). A contract is not rendered ambiguous simply because the parties disagree upon its proper construction. *See*

*Hampton*, 561 F.3d at 714. (citing *Whiting Stoker Co. v. Chi. Stoker Corp.*, 171 F.2d 248, 250-51 (7th Cir. 1948)). Rather, an ambiguous contract is "an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *Id*.

Here, the parties contractually agreed that in exchange for Smith's services, Elusta would pay him "40% of the gross amount recovered from the claim by settlement or judgment." "Furthermore," Elusta acknowledged that he understood and consented to the fact that Smith and Genson would "divide the attorney's fees recovered in [Elusta's] claim." In his present motion, Elusta asks the Court to ignore the attorney's fee language and to simply focus on the "40%" language. The Court cannot do so. A contract must be read as a whole, and isolated clauses may not be read out of context in construing the document. *See Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010). A court must give meaning and effect to each contract provision, as it is presumed that each provision was intended to serve a purpose. *See Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 713 (7th Cir. 1993); *see also Krilich*, 778 N.E.2d at 1164. Under general principles of contract interpretation, the Court cannot find that the provision granting Smith 40% of the gross amount recovered by "judgment" was meant to encompass attorney's fees – especially in light of the fact that the Agreement later identifies "attorney's fees" as requiring a separate, additional instruction. That instruction proves to distinguish them from the "judgment" referenced earlier.

Common sense supports this interpretation. By Elusta's own admission, his search for representation following the withdrawal of his first attorneys was challenging – many attorneys rejected his case. (R. 231, Elusta Fee Petition, at 4.) Smith and Genson agreed to represent Elusta "[d]espite uncertainties involved with the issues in this case." (*Id*.) It makes no sense that

after encountering such difficulties finding counsel, and acknowledging the uncertainties that Smith and Genson had to accept in taking his case, that Smith and Genson would then promise Elusta 60% of the attorney's fees they recovered in the event they succeeded. There was no need to entice Elusta to hire them as attorneys. The notion that Smith and Genson ceded Elusta their potential court-awarded attorney's fees by including them in the term "judgment" – especially when the Agreement specifically references attorney's fees later in the document – does not hold water.

As a final matter, even if the Court were to put contract law and common sense aside, attorney's fees were not entered as a "judgment" in this case. Judge Coar entered judgment consistent with the jury's verdict on October 16, 2008. (R. 226.) That judgment awards Elusta a gross amount of $40,000 in damages. As the parties submit, post-judgment interest in the amount of $369.87 has accrued. Pursuant to the Agreement, Elusta is entitled to 60% of $40,369.87. Elusta owes Smith and Genson the remaining 40%. Attorney's fees are usually awarded after the final judgment in a case, *see Palmer v. City of Chicago*, 806 F.2d 1316, 1318 (7th Cir. 1986), and they shall be awarded entirely to Smith and Genson. *See also Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 200, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (attorneys' fees are indisputably not part of the case's merits, but instead are the equivalent of costs "which are not generally treated as part of the merits judgment"); *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988) ("a request for costs raises issues wholly collateral to the judgment in the main cause of action"); *Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 576 (7th Cir. 2005) (citing *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445,

451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (request for attorneys fees under 42 U.S.C. § 1988 raises issues collateral to the judgment)).

## CONCLUSION

As discussed above, the Court denies Cerda and DeLeon's motion to reconsider. The Court also denies Elusta's motion to direct that the City pay the $15,000 *quantum meruit* award to Cerda, DeLeon and Breed. The Court denies Elusta's motion to direct payment of 40% of the § 1988 attorney's fees to Smith and Genson. In accordance with the contractual fee agreement, Smith and Genson are entitled to the full amount of court-awarded attorney's fees. Finally, Elusta is entitled to 60% of the judgment entered in this case – namely, judgment in the amount of $40,000 plus post-judgment interest. The parties shall have twenty-one (21) days to make payments consistent with this order.

**Date:** May 4, 2011

                **ENTERED**

                _____
                **AMY J. ST. EVE**
                **United States District Court Judge**